**ROYAL TRUST BANK, N.A.,**
Plaintiff-Appellant,

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,**
Defendant-Appellee.

No. 85–5316.

United States Court of Appeals,
Eleventh Circuit.

May 6, 1986.

Patricia H. Thompson, Miami, Fla., for defendant-appellee.

Welbaum, Zook, Jones & Williams, Robert A. Hingston and Betsy L. Warwick, Miami, Fla., for plaintiff-appellant.

Before GODBOLD, Chief Judge, FAY, Circuit Judge, and PECK *, Senior Circuit Judge.

GODBOLD, Chief Judge:

Royal Trust Bank incurred a loss of $331,986.38 as a result of a check kiting scheme perpetrated by one of its customers through an account that was managed by one of the bank's employees, Cynthia Aids. The bank brought this diversity suit seeking to recover under a fidelity bond issued by defendant insurance company, National Union.[1]

At trial National Union maintained that the loss was not covered by the bond because, before the bond became effective,

the bank had knowledge of facts that would lead a reasonable person to assume that a check kiting scheme was being perpetrated. Section 4 of the bond provides:

> This bond applies to loss discovered by the Insured during the bond period. Discovery occurs when the Insured becomes aware of facts which would cause a reasonable person to assume that a loss covered by the bond has been or will be incurred, even though the exact amount or details of loss may not then be known....

Rider 7 provides:

> 1. There shall be no liability in respect of any claim—
>
> (b) arising out of any circumstance or occurrence known to the Assured prior to the inception hereof and not disclosed to Underwriters at inception.

Testimony at trial indicated that the bank could have discovered the check kiting scheme before April 25, 1981, the effective date of the bond, if officers had paid closer attention to computer records and reports that were reviewed regularly. The jury returned a verdict in favor of National Union. The bank appealed, contending that the district court erred in (1) instructing the jury concerning the bank's knowledge, (2) refusing to instruct the jury that negligence on the part of any of the bank's officers or employees was not a defense to the claim, and (3) refusing to preclude testimony regarding allegedly negligent acts by the bank. All three assignments of error turn on the determination of whether the Bank's failure to investigate the irregulari-

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. The bank claimed coverages under Insuring Agreement "A" of the bond which provides:

    A. Loss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others.

    Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent

    (a) to cause the Insured to sustain such loss, and
    (b) to obtain financial benefit for the Employee or for any other person or organization intended by the Employee to receive such benefit other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment.

ties revealed by the computer records and reports precludes recovery on the bond.

The court instructed the jury that for the purposes of Rider 7 "knowledge" is defined as follows:

> The means of knowledge are ordinarily the equivalent in law to knowledge. So, if it appears from the evidence in the case that a person had information which would lead to [sic] reasonably prudent person to make inquiry through which he would surely learn certain facts, then this person may be found to have had actual knowledge of those facts, the same as if he had made such inquiry and had actually learned such facts.
>
> That is to say, the law will charge a person with notice and knowledge of whatever he would have learned, upon making such inquiry as it would have been reasonable to expect him to make under the circumstances.
>
> Knowledge or notice may also be established by circumstantial evidence. If it appears that a certain condition has existed for a substantial period of time, and that (the Plaintiff) had regular opportunities to observe the condition, then you may draw the inference that it had knowledge of the condition.

The bank contends that this instruction disregards this Florida law: "In the area of fidelity insurance, the law is well settled that negligence or inattention, or anything short of actual discovery on the part of the insured employer will not defeat recovery

under a fidelity bond covering the default of a dishonest employee, unless it is otherwise provided in the contract." *Dixie National Bank of Dade County v. Employers Commercial Union Insurance Company of America,* 463 So.2d 1147, 1152 (Fla.1985).

■ In this case the parties contracted for a greater limitation on liability than provided by Florida law. Section 4 of the bond provided that the bond applied only to losses discovered during the bond period and that discovery occurred when the bank became aware of facts that would cause a reasonable person to assume that a loss covered by the bond had been or would be incurred. Under the terms of the contract, negligence or inattention on the part of the bank precluded recovery. The jury instruction was correct.

■ The bank contends that the definition of "discovery" appears in Section 4 and therefore applies to Section 4 but does not apply to the definition of "knowledge" in Rider 7. Rider 7, however, is a restatement of Section 4. Under Section 4 the bond applies to loss "discovered" by the bank during the bond period.[2] Accordingly, losses "discovered" before the bond period are not covered. Rider 7 merely reiterates this presumption more explicitly by denying liability for any claim arising out of any circumstance or occurrence known to the Bank prior to the inception of the bond.

---

**2.** Section 4 provides that "[d]iscovery occurs when the Insured becomes aware of facts which would cause a reasonable person to assume that a loss covered by the bond has been or will be incurred...." In this case the "loss covered by the bond" is a loss resulting from the allegedly dishonest and fraudulent acts of Ms. Aids.

The bank contends that there is no testimony in the record that it knew of facts, prior to the bond period, that would reasonably justify it in charging Ms. Aids with fraud or dishonesty. Testimony established, however, that as a matter of bank policy, Ms. Aids' authority to approve payment of checks on uncollected funds extended to $1500. The bank's computerized reports offered into evidence showed that Ms. Aids frequently exceeded her authority in approving payments for the account in question.

For example, on February 18, 1981, she approved checks in excess of $25,000 and on February 19, 1981, she approved checks in excess of $100,000. At the same time the account from which the funds were kited and which was managed by Ms. Aids appeared almost daily on the bank's "kite suspect" report with increasingly higher negative balances.

The bond does not require that the bank have enough information to charge its employee with fraud or dishonesty. All that is required is that it have enough information to assume that the employee has acted fraudulently or dishonestly. Under the circumstances, a reasonable person would have assumed that Ms. Aids was acting fraudulently or dishonestly. The bank should have known of her behavior before April 25, 1981, the bond's effective date.

Because the bank's negligence was an issue, the court properly instructed the jury, properly denied the bank's requested jury instruction, and properly admitted testimony regarding allegedly negligent acts by the bank.

AFFIRMED.